**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**AMERICAN EXPRESS PUBLISHING CORP., Defendant.**

No. 87 Civ. 2626(MEL).

United States District Court,
S.D. New York.

March 7, 1988.

E.E.O.C., Robert L. Williams, Regional Atty., James L. Lee, Supervisory Trial Atty., Anna Stathis, Trial Atty., New York City, for E.E.O.C.

American Express Co. by Jeffrey A. Martel, Sr. Atty., General Counsel's Office, Skadden, Arps, Slate, Meagher & Flom by Henry P. Baer, New York City (Jerome F. Birn, of counsel), for American Exp. Pub. Corp.

LASKER, District Judge.

In this action the Equal Employment Opportunity Commission ("EEOC") alleges that American Express Publishing Corp. ("American Express") engaged in a policy of age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and that this policy led to the discharge of J. Stewart Lahey. The relief EEOC seeks consists of a permanent injunction ordering American Express to cease any employment practice that discriminates on the basis of age and a judgment for back pay and liquidated damages to individuals, including but not limited to Lahey, who were adversely affected by the American Express policy. American Express denies the existence of any policy or practice that discriminates against individuals protected by the ADEA and contends that Lahey was discharged because his work was unsatisfactory.

American Express moves for summary judgment on two grounds: 1) that any action for back pay, liquidated damages, or reinstatement for Lahey is barred by a general release he signed; 2) that claims for relief for individuals other than Lahey must be dismissed because the EEOC neither notified American Express of these claims nor investigated or attempted conciliation of them.

American Express' motion for summary judgment on the first ground is denied, because there are genuine issues of material fact concerning the knowing and voluntary nature of Lahey's release. The motion is granted on the second ground; because the EEOC's investigation and conciliation of claims for individuals other than Lahey were insufficient, the claims

brought on behalf of these individuals are dismissed.

## I.

American Express employed J. Stewart Lahey as a Senior Account Supervisor for American Express' Travel & Leisure Magazine ("the Magazine") for three and one half years, his employment beginning on June 15, 1981 when Lahey was 54 years of age. Lahey, a college graduate, sold advertising space for the Magazine. In January 1985, John Hillock, Vice President and Advertising Director of the Magazine, told Lahey that his employment would be terminated. American Express contends that Lahey was fired because his job performance was unsatisfactory, an allegation disputed by Lahey. Lahey maintains that American Express discharged him to avoid the vesting of a new pension plan for him. Under the new plan, employees hired by January 1, 1985 and still employed on April 30, 1985 became fully vested without a required ten years of service.[1]

In January 1985, Lahey signed an "Agreement and Release"[2] that states in relevant part:

> Mr. Lahey agrees to and hereby does release and discharge Releases from any and all claims, causes of action, and demands of any kind, whether known or unknown, which he has, ever has had, or ever in the future may have, and which are or may be based in whole or in part on, or do or may arise from or are or may be related to his employment, or association with Releases from the beginning of the world up to and including the date of this Agreement and Release.[3]

The circumstances surrounding the release are disputed. American Express contends that Lahey accepted the option of resigning and signing the agreement in consideration for receiving $3,300 in severance pay to which he would not otherwise have been entitled. The EEOC maintains that Lahey was not given an opportunity to resign and that he received only approximately $1,600 in consideration for signing the release. According to American Express, Lahey had a copy of the release in his possession from January 10 through January 21, during which time he reviewed his personnel file and indicated to the director of personnel services, James B. Kaag, that he had "a case" against American Express. EEOC, in contrast, asserts that Lahey had the release for only three days, beginning on January 21, that he reviewed his personnel file prior to being told his employment was ending, and that he never discussed the release or discharge with Kaag. There is no dispute that, prior to signing the agreement, Lahey sought the assistance of counsel, who advised him that the release was invalid. Nor does American Express disagree with Lahey's assertion that, when he signed the agreement, he said that he was doing so under duress.

On March 28, 1985, Lahey filed a charge with the EEOC, alleging that he had been the victim of age discrimination. On April 22, 1985, the EEOC served American Express with a questionnaire addressing Lahey's performance and termination, as well as the job requirements, performance evaluations, and termination of Senior Account Supervisors. Correspondence between the parties throughout 1985 and early 1986 focused on the effect and voluntariness of Lahey's release. On September 11, 1986, the EEOC issued a letter of violation, which included notification of the EEOC's willingness to engage in conciliation. In letters dated September 19 and 24, 1986, the EEOC reiterated its interest in conciliation. American Express, in its letters of September 29, 1986 to the New York and Washington EEOC offices, urged the EEOC to dismiss Lahey's charge on the ground that his release was valid and binding. In neither letter did American Ex-

---

1. Affidavit of J. Stewart Lahey at ¶ 26 (July 6, 1987) ("Lahey Affidavit").

2. The parties dispute the date of the agreement's execution. The agreement is dated January 21, 1985, but the EEOC contends that Lahey signed

it on January 24 without dating it and that American Express later back-dated the agreement for the 21st of January.

3. Affidavit of Jeffrey A. Martel, Exhibit A (June 12, 1987).

press indicate interest in conciliation discussions.

## II.

## A. CLAIMS FOR RELIEF FOR LAHEY

■ American Express argues that Lahey's execution of the release bars the EEOC from recovering individual relief on his behalf. In response, the EEOC contends that Lahey's waiver cannot have this effect because the release was not knowingly and voluntarily executed. I conclude that there are genuine issues of material fact as to the voluntary and knowing nature of Lahey's release that require denial of American Express' motion for summary judgment.

■ First, the EEOC contends that the release cannot bar its claim for recovery on Lahey's behalf because Lahey executed the release, as he told American Express personnel, under duress. Lahey states that when he signed the agreement, he was "in a dire financial situation, since I was the sole support of a family of six and I was one month behind in my mortgage and car payments."[4] This argument lacks merit. Contracts induced by duress are voidable, not void; acceptance of benefits under the agreement constitutes ratification. *Anselmo v. Manufacturers Life Insurance Co.,* 771 F.2d 417, 420 (8th Cir.1985); *DiMartino v. City of Hartford,* 636 F.Supp. 1241, 1252 (D.Conn.1986). There is no dispute in this case that Lahey accepted the benefits. Moreover, the fact that a party faces a difficult choice—between additional benefits or pursuing his legal rights—does not alone indicate lack of free will. *Anselmo,* 771 F.2d at 420. Finally, even assuming American Express knew of Lahey's dire

financial circumstances, it cannot be held responsible for pressure put on Lahey by others. *LaBeach v. Beatrice Foods Co.,* 461 F.Supp. 152, 158 (S.D.N.Y.1978).

■ The EEOC also argues that Lahey's release cannot satisfy the more subtle standards developed by the courts to evaluate the knowing and voluntary nature of ADEA releases. Determination whether a release is voluntary depends on: 1) the plaintiff's education and business experience, 2) the amount of the time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law. *See generally Lancaster v. Buerkle Buick Honda Co.,* 809 F.2d 539 (8th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); *DiMartino v. City of Hartford,* 636 F.Supp. 1241 (D.Conn.1986).

Reviewing the factors mentioned above, it is true that several militate in favor of dismissing EEOC's claims brought on behalf of Lahey. First, although not a labor lawyer, and thus not as sophisticated as the plaintiff in *Runyan v. National Cash Register Corp.,* 787 F.2d 1039 (6th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986), Lahey has a college degree and years of business experience. Second, although the agreement did not explicitly state that the release was intended to apply to ADEA claims, the agreement is not ambiguous.[5] The agreement is

---

**4.** Lahey Affidavit at ¶ 19.

**5.** Lahey's release does not suffer from the ambiguity that has concerned the courts when the release refers, not to causes of action, but to compensation practices, benefits, or rights to renumeration, thereby creating confusion whether the release covers ADEA claims. *See Anderson v. Montgomery Ward & Co.,* 650 F.Supp. 1480, 1486 (N.D.Ill.1987) (waiver of "all provisions of any compensation practices" could not be construed to apply to federal discrimination laws); *Bernstein v. Consolidated Foods*

*Corp.,* 622 F.Supp. 1096, 1106 (N.D.Ill.1984) (fact that agreement referred to "right to renumeration" and "compensation" rather than "causes of action" or "suits" creates genuine issue of material fact precluding summary judgment); *Oglesby v. Coca–Cola Bottling Co.,* 620 F.Supp. 1336, 1341 (N.D.Ill.1985) (release referring to "any claim ... with respect to employee benefits, insurance, salary or any other claim related to employment" was ambiguous, because it could reasonably be construed to relate only to employee benefits).

short, typewritten, and drafted in relatively clear language. Third, Lahey had an opportunity to consult an attorney.

Nevertheless, there are genuine issues of material fact as to several other factors that raise sufficient question as to the voluntariness of the agreement to preclude granting summary judgment. First, there is a genuine dispute as to the amount of time Lahey possessed the agreement before signing it. Although eleven days, the period of time for which American Express alleges Lahey had the agreement, would have been ample for Lahey to have read and considered the agreement, thereby suggesting that he executed it voluntarily, Lahey states that he possessed the agreement for only three days. Three days, while not conclusive as to involuntariness, is sufficiently short to create a question on the subject. Second, Lahey had no role in deciding the terms of the release. There is no indication that any of the release's terms were negotiated. Lahey was simply handed a printed form. Third, although neither party disputes that in consideration for executing the release Lahey received benefits to which he would not otherwise have been entitled, the amount of the consideration is disputed. Fourth, although Lahey consulted an attorney, the lawyer was not present when Lahey signed the agreement nor did the lawyer have any role in negotiating the settlement. Moreover, Lahey states that his attorney advised him that the agreement was not binding, a factor which, though not chargeable to American Express, may be relevant in determining Lahey's voluntariness in signing.

The disputes over these factors, particularly when inferences are drawn in the EEOC's favor as is appropriate on this motion, raise genuine issues of material fact precluding summary judgment under Fed.R.Civ.P. 56.

**B. SCOPE OF RELIEF SOUGHT**

■ The EEOC seeks as relief back pay and liquidated damages for Lahey and oth-

ers adversely affected by American Express' allegedly unlawful practices, as well as an injunction prohibiting discriminatory practices in the future. American Express contends that EEOC's claims for relief for individuals other than Lahey must be dismissed because the EEOC has failed to investigate and attempt conciliation of these other claims.[6] The EEOC responds that it investigated American Express' policy of waivers and thereby satisfied the requirement of the ADEA that conciliation be attempted before suit is brought. Because I conclude after additional briefing and argument on this issue that the EEOC did not satisfy the statutory requirement, American Express' motion for summary judgment on this ground is granted.

Section 7(b) of the ADEA states in part:

...Before instituting any action under this section, the Equal Employment Opportunity Commission shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion.

29 U.S.C. § 626(b) (1982). In order to meet this obligation, the EEOC must inform the employer, among other things, of the extent of the alleged violations. *See Marshall v. Hartford Fire Ins. Co.*, 78 F.R.D. 97, 106 (D.Conn.1978) (employer must know nature of all charges).

The evidence of record here appears to establish that the investigation and conciliation focused on Lahey's claim. The EEOC itself speaks of its questionnaire in such a way as to support American Express' characterization. In a letter of November 14, 1985, Deborah Reik, a senior trial attorney with the EEOC, stated:

The questionnaire Ms. Boyd sent you was narrowly focussed on the issue raised in Mr. Lahey's complaint.... She has asked questions regarding the job requirements, performance evaluations, and termination of Senior Account Supervisors.... These questions are designed

---

**6.** American Express in its memorandum of law also reserves the right to challenge the claims of unnamed individuals as barred in whole or in part by the statute of limitations should they not be dismissed on the motion for summary judgment.

to determine whether Mr. Lahey was treated differently because of his age or terminated for cause. They will also help in determining whether his waiver was voluntary.[7]

The EEOC's letter of violation, dated September 11, 1986, was very specific to Lahey and his charges; nothing in it can reasonably be construed to suggest a broader scope.[8] The EEOC's letters of September 24 and 26, 1986 referred to the charging party (Lahey), with no explicit reference to unnamed individuals. However, it is true that the September 24 letter stated, "We would welcome the opportunity to meet with you to more fully set forth EEOC's position, especially with respect to the issue of releases."[9] American Express, in its letters of September 29, 1986, stated that "this matter is neither appropriate for conciliation nor appropriate for litigation by the EEOC,"[10] because, it contended, Lahey's release barred any action.[11]

Only the EEOC's expression of interest in discussing the use of releases could possibly be construed to suggest that the EEOC's investigation and conciliation extended beyond Lahey. It could be argued that American Express, a large corporation which may be presumed to employ a knowledgeable staff of lawyers, could have understood this statement to reflect EEOC's interest in a wider-reaching investigation and conciliation. However, Congress, in adopting § 626(b) indicated that "conciliation, conference, and persuasion must constitute strong, affirmative attempts ... to effect compliance before resorting to legal action." *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 374 (8th Cir.1974). In this case, it cannot be said that the EEOC made "strong, affirmative attempts" to conciliate the claims for unnamed individuals.

Having found the conciliation attempts for individuals other than Lahey inadequate, the question remains whether the remedy advocated by American Express, namely dismissal of claims for relief not specific to Lahey, is appropriate. This issue falls between two bodies of cases arising under the ADEA in which conciliation has been found inadequate either because it fails to address the scope of the claims or because it was too abruptly curtailed.

In the first group,[12] class claims were dismissed where the charge filed with the EEOC was specific to an individual instance of discrimination; the scope of the conciliation was found insufficient. Allowing claims for broader relief to proceed, if the charge were so specific to an individual that an employer could not fairly anticipate class claims, would undermine the notice and conciliation requirement of the ADEA. *Kloos v. Carter–Day Co.*, 799 F.2d 397, 400 (8th Cir.1986) (administrative charge stating only personal claims of discrimination insufficient as basis of ADEA class claim);

---

7. Affidavit of Nancy Boyd, Exhibit F (October 15, 1987).

8. Supplemental Affidavit of Jeffrey A. Martel, Exhibit B, (October 1, 1987) ("Supplemental Martel Affidavit").

9. Supplemental Martel Affidavit, Exhibit C.

10. Supplemental Martel Affidavit, Exhibit D.

11. The EEOC, at one point in its papers, states that American Express, by its refusal to participate in conciliation discussions, prevented the EEOC from discussing American Express' general use of releases. If an employer refuses to conciliate or generally denies the allegations and is unwilling to discuss the charges, no further conciliation efforts need be made. *Marshall v. Sun Oil Co.*, 605 F.2d 1331, 1337 (5th Cir.1979); *EEOC v. Westinghouse Electric Corp,*

632 F.Supp. 343, 363 (E.D.Pa.1986); *EEOC v. Chrysler Corp.*, 546 F.Supp. 54, 63 (E.D.Mich. 1982), *aff'd*, 733 F.2d 1183 (6th Cir.1984); *Marshall v. Hartford Fire Insurance Co.*, 78 F.R.D. 97, 104 (D.Conn.1978). However, an employer's refusal to conciliate an individual claim cannot be construed to indicate a refusal to conciliate a class claim. *Kloos v. Carter–Day Co.*, 799 F.2d 397, 400 (8th Cir.1986).

12. These cases arise under § 626(d), which provides that an individual cannot file a civil action under the ADEA until 60 days after filing a charge with the EEOC. It also states that the EEOC shall notify named defendants of the charge and attempt conciliation. The notice requirements of § 626(d) have been more strictly construed than those of § 626(b). *Vance v. Whirlpool Corp.*, 707 F.2d 483, 488–89 (4th Cir. 1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984).

*Naton v. Bank of California,* 649 F.2d 691, 697 (9th Cir.1981) (plaintiff's case not maintainable as a class action given failure to express to state and federal agencies intent to sue on behalf of anyone but self); *Bean v. Crocker National Bank,* 600 F.2d 754, 760 (9th Cir.1979) (denying dismissal as to opt-in members because collective notice to sue indicated possible violations affecting other employees); *Hopper v. Timex Corp.,* 595 F.Supp. 668, 670 (E.D.Ark.1984) (plaintiff's charge could not serve as basis of class action because specificity of charge limited number of claims that might "relate" to it). American Express contends that under the holding of these cases—limiting the scope of a suit to the allegations of the charge and investigation reasonably growing out of it—the EEOC's claims for relief for those other than Lahey must be dismissed.

In the second body of cases, in which conciliation efforts have been found inadequate because they were too abruptly curtailed, defendants' motions for summary judgment have been denied and a stay granted. "[S]ummary judgment is far too harsh a sanction to impose on the EEOC even if the court should ultimately find that conciliation efforts were prematurely aborted." *EEOC v. Klingler Electric Corp.,* 636 F.2d 104, 107 (5th Cir.1981). *See also EEOC v. Prudential Federal Savings & Loan Ass'n,* 763 F.2d 1166, 1169 (10th Cir.) (holding stay, not dismissal, appropriate remedy if further conciliation efforts are required; dismissal would be incompatible with humanitarian nature of ADEA), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); *EEOC v. Pet, Inc., Funsten Nut Division,* 612 F.2d 1001, 1002 (5th Cir.1980) (staying rather than dismissing proceeding in which EEOC withdrew from conciliation prematurely); *Marshall v. Sun Oil,* 592 F.2d 563, 566 (10th Cir.) (holding stay, not dismissal, of proceeding appropriate if further proceedings found necessary), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).

Although it might be argued that the EEOC, by expressing its interest in releases, had begun to attempt conciliation of broader based claims, and thus that a stay is appropriate given the initiated yet incomplete conciliation attempts, dismissal is the proper remedy in this case. In the case at hand, unlike those in which a stay was granted, the EEOC cannot be said to have made "sufficient albeit limited effort to conciliate" the claims for individuals other than Lahey. *EEOC v. Prudential Federal Savings & Loan Assoc.,* 763 F.2d at 1169. *See also Marshall v. Sun Oil Co.,* 592 F.2d at 566 (holding stay appropriate given "substantial" effort at conciliation). Moreover, the EEOC's efforts to conciliate on behalf of unnamed individuals cannot be characterized as "sincere and reasonable," in the sense that its offers to conciliate did not provide the defendant an opportunity to respond to *all* charges. *EEOC v. Prudential Federal Savings and Loan Assoc.,* 763 F.2d at 1169. The conciliation for broader based relief was not abruptly curtailed; rather, it had never explicitly begun. Accordingly, dismissal, rather than a stay of claims for individuals other than Lahey, is appropriate.

In sum, American Express' motion for summary judgment as to claims brought on behalf of Lahey is denied but its motion to dismiss claims on behalf of other individuals is granted.

It is so ordered.