Richard A. LIVINGSTON,
Plaintiff–Appellant,

v.

ADIRONDACK BEVERAGE COMPANY,
Defendant–Appellee,

No. 1091, Docket 96–9301.

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1998.

Decided April 13, 1998.

William A. Walsh, Zeichner, Ellman & Krause, New York City, for plaintiff-appellant.

John W. Clark, Tobin & Dempf, Albany, NY, for defendant-appellee.

Before: CARDAMONE, McLAUGHLIN, Circuit Judges, and CONNER, District Judge.*

McLAUGHLIN, Circuit Judge:

## BACKGROUND

Richard Livingston, an individual of Hispanic descent, operated a soda bottle-capping machine for Bev–Pak, Inc. d/b/a Adirondack Beverage Company ("Adirondack"). He claims that during his tenure at Adirondack he was subjected to derogatory ethnic remarks that created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.*

Livingston contends that he first felt the sting of ethnic animus in 1991. While pouring soda down a drain, Livingston accidently splashed James Rufer, his shift supervisor. Rufer allegedly responded by striking Livingston with a soda bottle and calling him a

"Spic." Adirondack suspended Livingston without pay for his role in this altercation.

A second alleged incident arose out of an apparent workplace prank. Livingston asked Mike Gervais, a fellow employee, to bring some bleach into work. Gervais gave Livingston two sealed cups of "bleach." The cups, however, were filled with urine. When Rufer saw the cups, he inquired about the contents and Livingston said they contained bleach. Rufer inexplicably decided to taste the contents. After discovering the true nature of the liquid, Rufer became enraged and again allegedly called Livingston a "Spic."

The final alleged incident occurred in late 1991. After discovering that Livingston had incorrectly capped two hundred cases of soda, Rufer told him to remove all the cartons with the improper caps. Livingston refused, arguing that he was not qualified to operate the machine that removed the cartons. Livingston further protested that the error had been made by another employee. During the ensuing exchange, Rufer purportedly called Livingston a "Spic."

In August 1992, Livingston filed charges with the New York State Division on Civil Rights, alleging that the actions of Rufer and Adirondack constituted discrimination on the basis of race or ethnicity. Livingston and Adirondack eventually settled the grievance for $10,000. They executed an agreement ("the Agreement") releasing Adirondack from all existing claims and providing that:

> Mr. Richard A. Livingston, by signing this Agreement states that he has been afforded an opportunity to review the Agreement with advisors of his choice, that he has read and understands this Agreement and that he has signed this Agreement freely and voluntarily.

Livingston also signed two letters that had been prepared by Adirondack. The first was a voluntary letter of resignation. The second letter, addressed to the federal Equal Employment Opportunity Commission ("EEOC") and the New York State Division

* The Honorable William C. Conner of the United States District Court for the Southern District of New York, sitting by designation.

of Human Rights, stated that Livingston withdrew all pending claims.

Two years later, Livingston decided to sue Adirondack under Title VII. On December 7, 1994, the EEOC, upon the urging of Livingston's Congressman, the Hon. Michael McNulty, issued Livingston a right to sue letter. In a letter to Mr. McNulty, the EEOC explained that Livingston's original charge of employment discrimination had been closed after the EEOC received a copy of the Agreement. The EEOC indicated that it issued the right to sue letter because the information provided by Mr. McNulty, including a letter from the Capital District Psychiatric Center describing Livingston's history of schizophrenia, indicated that Livingston may have lacked the mental capacity to enter into a binding settlement and release.

Livingston, utilizing a form complaint, commenced his action in the United States District Court for the Northern District of New York on January 27, 1995. He also filed an *in forma pauperis* application and an application for appointment of counsel. After reviewing the complaint, Magistrate Judge Ralph W. Smith found that it failed to satisfy Rule 8 of the Federal Rules of Civil Procedure. The court explained the deficiencies to Livingston and reserved decision on whether to grant Livingston *in forma pauperis* status and counsel.

Livingston's second attempt to initiate a *pro se* suit met an identical fate. Again he tried. On July 11, 1995, Magistrate Judge Smith concluded that Livingston's third submission, denominated a "Second Amended Complaint," was sufficient. The court also granted Livingston's application to proceed *in forma pauperis* and ordered the Clerk to forward the summons and complaint to the United States Marshal for proper service.

Effecting valid service, however, proved to be as burdensome as filing a satisfactory complaint. In April, 1994, Adirondack had dissolved and had sold its assets to Adirondack Beverages, Inc. ("ABI"). On December 1, 1995, the new company, ABI, refused to accept the U.S. Marshal's "Acknowledgment of Service" form because Livingston's action had been commenced against the old compa-ny, "Adirondack Beverage Company." ABI received a second copy of the summons and complaint on April 30, 1996. This summons continued to designate the defendant as "Adirondack Beverage Company," an entity that ABI contends no longer exists.

Adirondack moved to dismiss, alleging that: (1) Livingston failed to effect proper service on any corporate entity; (2) Livingston unreasonably delayed effecting the issuance and service of the summons in violation of Fed.R.Civ.P. 4(m); and (3) the release contained in the Agreement barred Livingston's action. By Memorandum–Decision and Order, Magistrate Judge Smith dismissed Livingston's complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(I).

Concluding that the Agreement on its face barred Livingston's claim and the complaint failed to show the Agreement was invalid, the Magistrate Judge found Livingston's discrimination claims frivolous under 28 U.S.C. § 1915(e)(2)(B)(I). Relying on *Anderson v. Coughlin,* 700 F.2d 37 (2d Cir.1983), the Magistrate Judge reasoned that Livingston's "conclusory assertion that he was 'forced' to sign" the Agreement was insufficient to contest the validity of the release. He also concluded that the EEOC letter directly refuted Livingston's allegation of duress because that letter expressly stated that the Agreement "is not challenged due to [Adirondack's] actions but because of [Livingston's] own competency...." Finally, Magistrate Judge Smith noted that even if Livingston could successfully attack the validity of the Agreement, "his chances of success on the merits of his claim approach nil." Livingston now appeals.

## DISCUSSION

### A. *Standard of Review*

Before the 1996 enactment of the Prisoner Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act, Pub.L. No. 104–134, 110 Stat. 1321 (1996), this Court used to review the discretionary dismissal of an *in forma pauperis* action under 28 U.S.C. § 1915(d) for an abuse of discretion. *See Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728,

1733–34, 118 L.Ed.2d 340 (1992); *see also Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) (applying pre–1996 statute) (citation omitted). The PLRA redesignated § 1915(d) as § 1915(e) and mandated that a district court *"shall* dismiss the case" if the court determines that the action is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(I) (emphasis added).

Because of Congress's decision to make such dismissals mandatory, rather than discretionary, a question arises whether the standard of review for dismissals under § 1915(e)(2)(B)(I) has also changed. Some circuits presume that they may continue to review such dismissals for an abuse of discretion. *See Norton v. Dimazana,* 122 F.3d 286, 291 (5th Cir.1997); *McWilliams v. Colorado,* 121 F.3d 573, 574–75 (10th Cir.1997). *But see McGore v. Wrigglesworth,* 114 F.3d 601, 604 (6th Cir.1997) (dismissal under § 1915(e)(2)(B)(I) reviewed *de novo* ) (citation omitted). We need not reach this issue, however, because under either an abuse of discretion or a *de novo* standard, the Magistrate Judge erred in dismissing Livingston's claim.

B. *Dismissal of an In Forma Pauperis Action*

 A district court must dismiss an *in forma pauperis* action if the action is "frivolous or malicious." *See* 28 U.S.C. § 1915(e)(2)(B)(I). An action is "frivolous" when either: (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is 'based on an indisputably meritless legal theory.' " *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989)). A claim is based on an "indisputably meritless legal theory" when either the claim lacks an arguable basis in law, *Benitez v. Wolff,* 907 F.2d 1293, 1295 (2d Cir.1990) (per curiam), or a dispositive defense clearly exists on the face of the complaint. *See Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995).

We have refined the appropriate standard for *sua sponte* dismissal since *Anderson,* which Magistrate Judge Smith relied upon

and which preceded the Supreme Court's pronouncements in *Neitzke* and *Denton.* In *Nance,* 912 F.2d at 606–07, we permitted an *in forma pauperis* complaint to stand even though the plaintiff had only cryptically alleged the basis of his Eighth Amendment cruel and unusual punishment claim. We concluded that when an *in forma pauperis* plaintiff raises a cognizable claim, his complaint may not be dismissed *sua sponte* for frivolousness under § 1915(e)(2)(B)(I) even if the complaint fails to "flesh out all of the requisite details." *Id.* at 607; *see Benitez,* 907 F.2d at 1295 ("Where a colorable claim is made out, [*sua sponte* ] dismissal is improper prior to service of process and the defendants' answer.") (citations omitted); *see also Hemmings,* 134 F.3d at 108 (*sua sponte* dismissal improper since plaintiff "advanced at least a colorable claim warranting further development of the facts").

This doctrinal refinement stems from the Supreme Court's holding in *Denton* that an *in forma pauperis* complaint may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton,* 504 U.S. at 33, 112 S.Ct. at 1733. Indeed, the *Denton* Court warned that a court's endeavor to analyze whether an *in forma pauperis* complaint is frivolous "cannot serve as a fact-finding process for the resolution of disputed facts." *Id.* at 32, 112 S.Ct. at 1733.

 Reading Livingston's *pro se* complaint broadly, as we must, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), Livingston's complaint is not frivolous. Livingston says that he was "forced" to sign the Agreement. The next paragraph of his complaint states that he "was threatened by Vice President Martin and Supervisor Rufer that if I did not resign, they would continue to harass, humiliate and retaliate against me, as well as treat me unequally and ultimately terminate me." Taken together, these statements sufficiently challenge the validity of the release to preclude a finding that the complaint clearly establishes a dispositive defense.

 Indeed, unlike a statute of limitations defense, *see, e.g., Pino,* 49 F.3d at 53, the validity of a release is a peculiarly fact-

sensitive inquiry. We employ a "totality of the circumstances" test to determine whether a release of Title VII claims is knowing and voluntary. *See, e.g., Nicholas v. NYNEX, Inc.,* 929 F.Supp. 727, 730 n. 1 (S.D.N.Y. 1996). Factors relevant to this inquiry include:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Bormann v. AT & T Communications, Inc.,* 875 F.2d 399, 403 (2d Cir.1989) (quoting *EEOC v. American Express Publishing Corp.,* 681 F.Supp. 216, 219 (S.D.N.Y.1988)). In addition, courts have considered a seventh factor—whether the employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so. *Id.*

Analyzing Livingston's complaint under the *Bormann* lens reveals that the Magistrate Judge lacked sufficient information to conduct an appropriate inquiry. Livingston's complaint does not describe his education or any relevant employment experience outside his tenure at Adirondack. The complaint is also silent about how long Adirondack gave him to review the Agreement, whether he was involved in its drafting, and the value of what he waived in exchange for the $10,000. All this information may be relevant in assessing the validity of the release, yet none of it is apparent from the face of the complaint. Although the Magistrate Judge cited *Nicholas,* he was unable to analyze the *Bormann* factors enumerated in *Nicholas* by reference to the face of the complaint. *See Denton,* 504 U.S. at 34, 112 S.Ct. at 1734; *see also Nance,* 912 F.2d at 607.

■ In concluding that the EEOC letter directly refuted plaintiff's claim that he was forced to sign the Agreement, the Magistrate Judge also improperly resolved an issue of fact. As the Supreme Court clearly stated in *Denton,* a *sua sponte* dismissal for frivolousness is not a vehicle for resolving factual questions. *See Denton,* 504 U.S. at 32, 112 S.Ct. at 1733. As long as Livingston set forth a viable claim of duress, his complaint should have been allowed to proceed.

■ Moreover, the Magistrate Judge improperly relied upon his prediction that Livingston's chances of ultimately prevailing on the merits were "nil." A claim is frivolous not when a court doubts its validity, but rather when it lacks an arguable basis in law—for example, when a plaintiff claims an infringement of a legal interest that does not exist. *See Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1832–33. Underlying Livingston's complaint is a claim of racial discrimination, a legal interest that most certainly does exist. The Magistrate Judge concluded that the allegations of racial slurs alone were insufficient to make a showing of discrimination. However, we have previously observed that the use of racial slurs can create an objectively hostile or abusive workplace in violation of Title VII. *See Torres v. Pisano,* 116 F.3d 625, 632–33 (2d Cir.1997) ("[A] reasonable Puerto Rican would find a workplace in which her boss repeatedly called her a 'dumb spic' and told her that she should stay home, go on welfare, and collect food stamps like the rest of the 'spics' to be hostile."); *cf. Schwapp v. Town of Avon,* 118 F.3d 106, 112 (2d Cir.1997) (whether ten racially-hostile incidents in a twenty-month period created a hostile work environment constituted a material fact question precluding summary judgment). Because Livingston "advanced at least a colorable claim warranting further development of the facts," *sua sponte* dismissal was improper. *Hemmings,* 134 F.3d at 108.

### C. *Failure to Effect Timely Service*

Adirondack contends that this Court should affirm the dismissal on the alternative ground that Livingston failed to effect proper and timely service. Because the Magistrate Judge dismissed the complaint without ruling on Adirondack's alternative ground, we have no basis on which to address this argument,

and express no opinion on the issue. *See Nance*, 912 F.2d at 607.

### CONCLUSION

Because neither the validity of the release contained in the Agreement nor the absence of a legitimate legal interest is apparent from the face of Livingston's complaint, the Magistrate Judge improperly dismissed the complaint.

Accordingly, the decision is REVERSED and REMANDED for further proceedings.