Robert E. **BORMANN**, Domenick R. Ferrantino, Timothy J. Ferriter, Harry M. Gardner, Ronald A. Jacobsen, James W. Meyers, Helmut Saarts, Cornelius J. Smith, Karl Ortler, Albert J. Taggi, Neville Smith and Thomas J. McGuire, Plaintiffs–Appellants,

v.

**AT & T COMMUNICATIONS, INC.,** Defendant–Appellee.

No. 1026, Docket 88–9095.

United States Court of Appeals, Second Circuit.

Argued May 1, 1989.

Decided May 25, 1989.

**400**

Charles A. Bradley, White Plains, N.Y. (Taylor, McCullough, Goldberger & Geo-ghegan, of counsel), for plaintiffs-appellants.

Joel L. Finger, New York City (Roberts & Finger, Carter K. Combe, of counsel), for defendant-appellee.

Before KAUFMAN, FEINBERG and NEWMAN, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiffs, 12 former second-level managers of AT & T Communications, Inc. (AT & T), appeal from a judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, Ch. J., dismissing their claims under the Age Discrimination in Employment Act, 29 U.S. C. §§ 621–634 (ADEA). The dismissal was based upon appellants' knowing and voluntary waiver of their right to sue AT & T for age discrimination. For reasons given below, we affirm.

*Background*

During a significant reduction in force in 1986, AT & T eliminated appellants' second-level managerial positions in White Plains and New York City. In preparation for the reductions, AT & T developed a Termination Payment Plan for Surplus Management Employees ("The Plan"), which provided for separation payments to surplus management employees who were not placed in other available positions at AT & T by their separation date. The Plan provided departing employees with two termination payment options. Under the first option, a plan participant could choose to receive a lump sum termination payment equal to 5% of the manager's base pay per year multiplied by the number of years of net credit service up to a maximum of 20 years. Under the second option, a manager could choose to receive only 3%, rather than 5%, of base pay in applying this formula. Thus, under the first option, an employee with 20 or more years of service would receive a termination payment equal to a year's base pay. Under the second option, such an employee would receive a payment of only 60% of annual base pay. However, in order to receive the higher percentage under the first option, AT & T

required a manager to sign a "full Legal release," which provided that the employee give up "all claims ... and causes of action" relating to the employee's employment or termination of employment, including any rights under laws that prohibit discrimination on the basis of age. The company advised those considering the options that *"you may wish to consult your attorney."* (emphasis in original). No release was required from those choosing the second, lower option.

In October 1985, representatives from AT & T's Regional Personnel Department in Oakton, Virginia conducted a series of five meetings in New York City and White Plains to discuss the force reduction program and termination pay options ("Oakton meetings"). Following these meetings, all appellants chose the first option and signed the separation agreements and releases in late 1985 and early 1986. Since each appellant had been at AT & T for more than 20 years and each received a salary of approximately $50,000, the additional consideration for choosing the first option was approximately $20,000 for each appellant. All appellants were discharged in early 1986.

In June 1987, appellants sued AT & T for age discrimination under the ADEA. In its answer and counterclaim, AT & T pleaded the separation agreements and releases as an affirmative defense that barred appellants' suit.

On the basis of this defense, in December 1987, AT & T moved for summary judgment. In an opinion dated March 28, 1988, the district court concluded that "an unsupervised waiver of rights can be a bar to a private action under the ADEA, so long as it is knowingly and voluntarily given." However, the court denied AT & T summary judgment because there was a dispute over whether responsible AT & T personnel had stated or implied that "the releases were of doubtful legal enforceability," thus, in effect, persuading appellants to sign the documents on the misrepresentation that they could not, or would not, be enforced. The district court ordered a sep-

arate trial on this issue pursuant to Fed.R. Civ.P. 42(b).

The trial took place in November 1988, at which time the court heard 13 witnesses. At the close of the trial, the court found that appellants had failed to provide "sufficient evidence of misrepresentations rising to the level which would justify reasonable reliance [on the alleged false assurances] in light of the language of the instruments." Having decided this disputed issue of fact, the district court concluded that because the releases were signed knowingly, voluntarily and for valuable consideration, appellants had waived their right to sue AT & T for age discrimination. This appeal followed.

*Discussion*

Appellants make a number of arguments in this court, but the strongest is that the district court erred in concluding that an unsupervised waiver of rights can bar a private action under the ADEA, so long as it is knowingly and voluntarily given. By "unsupervised," appellants mean a release entered into without the prior approval of a court or the Equal Employment Opportunity Commission (EEOC), the agency now administering the ADEA.

The issue of whether an unsupervised waiver of rights is permissible under the ADEA has been addressed by other courts of appeals. There is a "general consensus that the private settlement of claims is not inconsistent with the ADEA," *Coventry v. United States Steel Corp.*, 856 F.2d 514, 517 (3rd Cir.1988), even though the ADEA incorporates by reference the enforcement provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 216, 217, and private waiver of claims under the latter act has been precluded by such Supreme Court decisions as *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), and *D.A. Shulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946). See *Lancaster v. Buerkle Buick Honda Co.*, 809 F.2d 539, 540 (8th Cir.) (no absolute bar to release of claims under the ADEA), cert. denied, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); *Runyan*

*v. National Cash Register Corp.*, 787 F.2d 1039, 1041–43 (6th Cir.) (in banc) (same), cert. denied, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). Two district courts from this circuit have also reached similar conclusions. See *EEOC v. American Express Publishing Corp.*, 681 F.Supp. 216, 219 (S.D.N.Y.1988) (assuming that unsupervised waivers are permissible); *DiMartino v. City of Hartford*, 636 F.Supp. 1241, 1248 (D.Conn.1986) (holding that the ADEA does not bar "voluntary and knowing" settlement of claims). The discussion in these cases of the reasons why the FLSA analogy does not control settlement of ADEA claims, a proposition with which we agree, has been ample, and we see no need to add to it.

In addition, we find persuasive the Third Circuit's analysis in *Coventry*, which focuses on a comparison of the ADEA and Title VII, 42 U.S.C. § 2000e et seq. 856 F.2d at 522. Under Title VII, an employee may validly waive a claim of discrimination so long as the waiver is made "knowingly and willfully." *Id.* (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 & n. 15, 94 S.Ct. 1011, 1021 & n. 15, 39 L.Ed.2d 147 (1974)). Given that Congress intended that claims under both statutes be expeditiously resolved, *Coventry*, 856 F.2d at 522 n. 8, and that Congress gave the statutes a common scheme for achieving the goal of voluntary compliance, *DiMartino*, 636 F.Supp. at 1247, we find analogizing the ADEA to Title VII appropriate in this context.

Appellants contend that recent actions by Congress indicate that these courts have misconstrued congressional intent in holding that an unsupervised waiver of rights is permissible under the ADEA. Appellants refer first to an EEOC final rule that would have permitted the unsupervised waiver of rights under the ADEA and to congressional action cutting off appropriations for enforcement of that rule. See Departments of Commerce, Justice, and State, The Judiciary and Related Agencies Appropriation Act, 1989, Pub.L. No. 100–459, 102 Stat. 2186, 2216 (1988); Continuing Appropriations, Fiscal Year 1988, Pub.L. No. 100–202, 101 Stat. 1329, 1329–31 (1987). Appellants also point to two bills recently introduced in the House and Senate that would strictly limit the use of unsupervised waivers. See Age Discrimination in Employment Waiver Protection Act, S. 54, 101st Cong., 1st Sess., 135 Cong.Rec. S357 (daily ed. January 25, 1989); 135 Cong.Rec. E816 (daily ed. March 15, 1989) (statement of Rep. Hawkins introducing House version of Age Discrimination in Employment Waiver Protection Act). Appellants claim that these appropriations acts and the introduction of these bills show that the ADEA does not permit unsupervised waivers except in settlement of a previously filed claim or charge.

■ We agree with appellants that this congressional activity indicates that there is now significant support in Congress for limiting the use of unsupervised waivers. We sympathize with the dilemma of older workers who, after many years of employment, are offered enhanced termination benefits for a waiver of legal rights. Yet, the introduction of these bills and the passage of recent appropriations legislation are not an authoritative interpretation of what the ADEA meant when the statute was enacted in 1967. See *Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 2550–51, 101 L.Ed.2d 490 (1988). If Congress passes the bills that are now before it, the amendment will, of course, be an authoritative expression of what the 1989 Congress intended, see *id.*, but until it does so, we can find no persuasive reason to disagree with the statutory interpretation of our sister circuits. See *Coventry*, 856 F.2d at 521–22 & n. 8; *Runyan*, 787 F.2d at 1043. Therefore, we hold that an unsupervised release of rights under the ADEA is permissible, subject to a close evaluation of various factors that are indicia of a "knowing" and "willful" waiver. See *Coventry*, 856 F.2d at 518.

■ Appellants also argue that even if an unsupervised waiver is permissible under certain circumstances, this one should be set aside because disputed issues of fact remain regarding whether appellants "were given sufficient time to make a considered choice" and whether they signed

the separation agreements and releases knowingly and willfully. In considering this argument, we must first clarify the standard that should be used in deciding whether an employee signed a release knowingly, willfully and free from coercion. The Fifth and Eighth Circuits appear to apply "ordinary contract principles" in determining whether a waiver has been signed "knowingly and willfully." See *Lancaster*, 809 F.2d at 541; *Runyan*, 787 F.2d at 1044 n. 10. The Third Circuit applies a "totality of the circumstances" standard, which is apparently more stringent. *Coventry*, 856 F.2d at 524. The Third Circuit found "helpful" in determining whether a release is voluntary, *id.* at 523, the following enumeration of factors by Judge Lasker in *EEOC v. American Express Publishing Corp.*, 681 F.Supp. at 219:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

The list is obviously not exhaustive, and we would add to it whether an employer encourages or discourages an employee to consult an attorney, see *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 454 (3rd Cir.1988), and whether the employee had a fair opportunity to do so. In any event, we adopt the Third Circuit's "totality of the circumstances" standard, which is consistent with the strong congressional purpose underlying the ADEA to eradicate discrimination in employment. *Coventry*, 856 F.2d at 522–

23. In adopting this standard, we stress again the need to examine carefully any situation in which an older worker bargains away the statutory right to be free from age discrimination.

■ Applying this standard to the case at hand, we find that although the district court did not explicitly use the "totality of the circumstances" standard, its "scrutiny of the circumstances" surrounding the signing of the releases was adequate. In its March 1988 opinion on AT & T's motion for summary judgment, the district court found that it was undisputed that appellants "were experienced executives familiar with reading and analyzing contracts;" that "the release itself is written in clear and unambiguous language," specifically referring to age discrimination claims; and that the release also states above the signature line that the signer is aware of the right to consult an attorney before signing it. The court also held that on the undisputed facts before it appellants had "sufficient time to consider the release;" and that "there was no economic duress," conclusions that we cannot say were wrong. Accordingly, the district court was prepared to grant AT & T summary judgment on its motion, except for the factual issue of misrepresentation as to the effect of the releases. We believe that the district court sufficiently examined the "totality of the circumstances" surrounding the Plan with care and concern for the rights of older workers.[1] We also agree that the only genuine factual issue was whether the company misrepresented the effect of the releases.

■ On the trial of this issue, we find no error in the district court's credibility determinations, findings of fact and conclusions of law and in its decision, therefore, to grant judgment to AT & T and to dismiss

---

1. Although appellants apparently did not have an opportunity to negotiate the terms of the waiver, which is one of the issues relevant to whether the release was signed knowingly and willfully, we do not believe that this fact alone requires a trial on "voluntariness." A company's willingness to negotiate the terms of a waiver is, in part, additional evidence for the court that the employees realized that they were giving up potentially valuable legal rights in ex-

change for consideration. In this case, other indicia, like the clarity of the waiver, make unmistakeably clear that appellants were aware that they were giving up "important rights." Our conclusion in this case does not mean that this factor is irrelevant in considering the voluntariness of a waiver nor that, on other facts, we would not deny a company's motion for summary judgment due to its alleged unwillingness to negotiate the terms of a waiver.

the complaint. In affirming the district court's judgment, we do not suggest that we approve of termination plans like the one at issue in this case. We agree with the district judge that this plan "was calculated to and did have an impact on the rights of some or all of these employees under the ADEA." However, we cannot say that the district judge erred in concluding that those rights were bargained away.

Appellants also argue that we should invalidate the release in this case because it does not involve a bona fide factual dispute over AT & T's motivation and intent such as existed in *Runyan*. The argument has no merit. In their brief, appellants admit that certain employees were suspicious of AT & T's motives prior to signing the releases. Appellants' keen interest in the legality of the releases at the Oakton meetings belies any claim that they did not suspect that appellee may have had discriminatory motives in formulating the Plan.

■ Finally, appellants claim that the district court erred in granting AT & T summary judgment because the court failed to view all disputed issues of fact in the light most favorable to appellants and because it failed to afford appellants an opportunity for full and complete discovery. However, the judge applied the appropriate standard on a motion for summary judgment in deciding whether there were disputed issues of material fact, and, indeed, found one, as shown above. In addition, the court not only gave appellants full discovery on the issue of the enforceability of the separation agreement and release, which was all that was required in determining whether appellants' claims were barred by appellee's affirmative defense, but also granted appellants' request in October 1987 to expand the scope of that discovery. In any case, appellants' failure to seek in the trial court the discovery they now say was denied them prevents them from raising the issue for the first time on appeal.

Since the principal issue on this appeal had not been directly addressed by this circuit previously, appellee's request for sanctions is denied.

The judgment of the district court is affirmed.