**Berneda R. O'SHEA, Plaintiff and Counterdefendant,**

v.

**COMMERCIAL CREDIT CORPORA- TION, Defendant and Counterplaintiff.**

**Civ. No. S 89–2293.**

United States District Court, D. Maryland.

April 2, 1990.

W. Michel Pierson, Baltimore, Md., for plaintiff and counterdefendant.

Jeffrey P. Ayres, Peter S. Saucier and Brenda J. Tranchida, Venable, Baetjer & Howard, Baltimore, Md., for defendant and counterplaintiff.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This age discrimination (ADEA) case is before the Court on the motion of the defendant for summary judgment on its claim-in-chief and for partial summary judgment on its counterclaim, as well as plaintiff's motion for summary judgment on the counterclaim. The motions have been fully briefed, and no oral argument is deemed necessary.

Summary judgment is to be awarded in the absence of a genuine dispute of material fact, that is, one as to which the party moved against, were the case in a directed verdict posture, would be entitled to go to the jury under the applicable proof burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On this record, the defendant is entitled to summary judgment on the claim-in-chief.

First, there is no dispute that plaintiff, although she filed an administrative complaint with the E.E.O.C., failed to file with the Maryland Commission on Human Rights. In an opinion applying the *ratio* of *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), to a case indistinguishable in pertinent part from this one, Senior Judge Kaufman of this Court recently concluded that an ADEA claimant who does not file with the Maryland Commission is barred from suit. *Scheller v. Hydrotherm, Inc.*, 728 F.Supp. 377, 51 BNA FEP Cases 979 (D.Md.1989). The Court does not, however, rest summary judgment in this case upon this ground, because there is some authority for the proposition that such failure to exhaust should result only in a non-prejudicial dismissal for the purpose of allowing the initiation of administrative proceedings. *See Oscar Mayer*, 441 U.S. at 759, 99 S.Ct. at 2073. *But see Cornett v. AVCO Financial Services*, 792 F.2d 447, 450 (4th Cir. 1986).

■ The defendant is, however, entitled to summary judgment on the defense of release. The undisputed facts show that the plaintiff signed, in August, 1987, a written instrument that specifically released, in clear and unambiguous language, all claims for, *inter alia*, age discrimination, which category of claims was specifically mentioned in the release. The undisputed facts also show that the plaintiff (hardly an unsophisticated laborer, but a computer specialist earning over $40,000 per year) was fully aware of the contents of the release, that it was supported by adequate consideration in the form of severance benefits to which she was not otherwise entitled and that constituted a contemporaneous exchange for the release, that she at all times disputed the merits of her termination, that she was given four or five days (which she took) to decide whether to sign it, and that she consulted *two* attorneys and some close friends before signing it. It is not necessary that she have had a full understanding of all the possible legal bases for suit when she signed the release, but simply that she have been aware that

she potentially had a claim against her employer of some nature, which awareness is certainly attested to by, *inter alia,* her having had the document reviewed by two attorneys. *Cf. Bormann v. AT & T Communications, Inc.,* 875 F.2d 399 (2d Cir. 1989).

■ Under principles of federal and Maryland contract law applicable to the issue of release, the decision to release federally-protected rights is enforced if the decision was voluntary, deliberate, and informed, *see Bushnell v. Rossetti,* 750 F.2d 298, 302 (4th Cir.1984). One who has had ample time to read a release and had the capacity to understand it is bound thereby, in the absence of fraud, duress or imposition. *Vincent v. Palmer,* 179 Md. 365, 375, 19 A.2d 183 (1941). Under Maryland law, the party attacking the release even on the enumerated grounds has the burden of impeaching it by evidence beyond a preponderance, that is, by evidence that is clear, precise, and convincing to the point of reasonable indubitability, *Gingell v. Backus,* 246 Md. 83, 88–91, 227 A.2d 349 (1967), but that does not appear to be the generally-recognized standard applied to release of federally-protected rights. Although some federal cases have taken an "enlightened" totality of the circumstances approach, other federal cases have adhered to a traditional contract analysis, closer to the rule stated in *Bushnell v. Rossetti, supra. See Bormann,* 875 F.2d 399 at 403 (collecting cases). In this case, plaintiff's second thoughts, which resulted in the fullness of time in the filing of this lawsuit, do not even begin to approach the standard set forth even in the "totality of the circumstances" cases such as *Bormann,* and, were this case in a directed verdict posture, would not warrant the submission of the release question to the jury under the applicable proof burdens. *Anderson v. Liberty Lobby.* Finally, the undisputed facts also show that plaintiff ratified the release, thereby removing any impediment that might theretofore have existed, by accepting and retaining benefits under it. Thus, summary judgment is warranted on the release defense, in defendant's favor. *Anderson v. Liberty Lobby, Inc.*

The Court rejects plaintiff's contention that she is absolutely entitled to go to a jury on the question of the voluntariness of the release. It might be true that she was quite upset over the elimination of her position, but this would not relieve her from the consequences of her voluntary act, under the authority cited above. Especially is this the case where, as here, the potential plaintiff consults with counsel before signing the release. Plaintiff seeks to draw attention away from these consultations on the ground that one of the attorneys she consulted does not consider himself an expert in labor law, and the other thought he did not have time to do a complete analysis. The first attorney properly advised plaintiff to seek a labor expert. If that expert felt he did not have time to do a complete analysis of the situation, he certainly could have advised plaintiff to seek an extension or could have sought one himself, as her counsel. In the event, neither was done. The consequences of this cannot fairly be made to fall on the employer, which gave plaintiff plenty of time to seek competent advice.

The Court rejects the plaintiff's theory that a heightened standard of scrutiny, even beyond that utilized in *Bormann,* ought to be applied to the release in this case simply because it arises in an ADEA context. The persons protected by the ADEA hardly constitute a traditionally beleaguered minority, in that the class is made up of all persons, regardless of race or sex, over the age of forty. For as long as civilization has existed on this Earth, power in practically all things spiritual and temporal has belonged to this elder class, and the Congress' enactment of the ADEA has not made it otherwise. It is they who have the wealth and occupy the jobs, by and large, that make the economy and the government of this country go. These points were ignored by the court in the case upon which plaintiff principally relies, *Coventry v. United States Steel Corp.,* 856 F.2d 514, 521–25 (3d Cir.1988). Thus, *Coventry* is not persuasive in this regard. (The Court notes that, although the *Bormann* court drew its standard in part from

*Coventry,* it did not reach a result consonant with that of *Coventry.*) If *Coventry* were to be rigorously followed, an employer could likely never obtain a release that would serve its intended purpose of *keeping the parties out of court.* An employer would practically be required to provide the employee with a battery of labor lawyers and an unlimited amount of time to deliberate, and would still likely find itself in court before a jury when the employee attacks the release on the ground that it was not "knowingly" and "willingly" executed, as those terms were applied in *Coventry.* Furthermore, the employer would be held to vastly differing standards of law on the release of state and federal claims (because the ADEA does not pre-empt state law claims) arising out of any adverse personnel action. In this Court's opinion, there is no sound reason why a release sufficient under state law and such cases as *Rossetti* and *Bormann,* which this one plainly was on the undisputed facts, ought not to suffice also under the ADEA. Although there is authority in this District taking a pinched view of the release of *Title VII* claims, *Chastang v. Flynn & Emrich Co.,* 365 F.Supp. 957, 968 (D.Md. 1973), that authority is not persuasive here, for several reasons. First, the release at issue there was (albeit re-executed after the enactment of Title VII) executed in 1946, long before any hint of a claim under any theory of law arose. Second, the release in this case, unlike that in *Chastang,* does not contravene public policy, because public policy must now be seen as embracing the entirely legitimate goal of encouraging non-litigative resolution of disputes, especially as the federal courts become increasingly unavailable to civil litigants as a result of burgeoning criminal trial caseloads. Finally, the enactment of Title VII, the statute at issue in *Chastang,* served the purpose of protecting a traditionally deprived minority, unlike, as detailed above, the vast class of persons protected by the ADEA.

With regard to defendant's counterclaim, summary judgment will be entered thereon in plaintiff's favor. The release did not contain any express language by which plaintiff affirmatively covenanted not to bring suit, nor is there any sufficient basis to imply such a covenant as a contract implied-in-fact. In any event, it is against public policy to penalize by assessment of contract damages, such as legal fees and non-court costs, one who has, in good faith (albeit unsuccessfully), challenged a release. *See, e.g., Wolcott v. Ginsburg,* 697 F.Supp. 540, 547 (D.D.C.1988). If such a challenge is not made in good faith, the appropriate remedy is a sanction under Fed.R.Civ.P. 11 or a statutory motion for attorney's fees. The Court does not now make a specific finding on the issue of plaintiff's good faith.

An order will be entered separately, granting summary judgment for the defendant on the claim-in-chief, and for the plaintiff on the counterclaim.