William B. GORMIN, Individually and on behalf of others similarly situated, et al., Plaintiffs Counterclaim–Defendants–Appellees,

v.

**BROWN–FORMAN CORPORATION,**
Defendant Counterclaim–
Plaintiff–Appellant.

Jack A. ADAMS, et al., Plaintiffs–
Appellees,

v.

**BROWN–FORMAN CORPORATION,**
Defendant–Appellant.

**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,**
Plaintiff–Appellee,

v.

**BROWN–FORMAN CORPORATION,**
Defendant–Appellant.

No. 91–3410.

United States Court of Appeals,
Eleventh Circuit.

June 15, 1992.

Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, Tampa, Fla., Kenneth J. McCulloch, Kramer & Levin, New York City, J. Craig Peyton, Weinberg & Green, Baltimore, Md., Richard H. Sinkfield, Rogers & Hardin, Atlanta, Ga., for Brown–Forman Corp.

Robert E. Williams, Douglas S. McDowell, Ann Elizabeth Reesman, McGuinness & Williams, Washington, D.C., amicus curiae for E.E.O.C.

Allen M. Blake, Edward E. Fessenden, Jr., Tampa, Fla., Norman B. Smith, Smith, Patterson, Follin & James, Greensboro, N.C., for Jack Adams.

Before FAY and EDMONDSON, Circuit Judges, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

Brown–Forman Corporation appeals from a district court order holding that all releases of claims under the Age Discrimination and Employment Act, 29 U.S.C. §§ 621–34, are invalid unless they are supervised by a court or by the Equal Employment Opportunity Commission. For the reasons that follow, we REVERSE the district court's order and REMAND for a determination of whether the release in this case was made knowingly and voluntarily.

## I. BACKGROUND

Brown–Forman Corporation (Brown–Forman) is a Delaware corporation with its principal place of business in Kentucky. Founded in 1870, it produces and markets several products, including Jack Daniel's, Southern Comfort, and Korbel champagnes.

In November 1986, Brown–Forman initiated a reorganization plan to eliminate overlapping positions within the company. Because the plan called for the termination of a number of its workers, Brown–Forman implemented special procedures to notify the affected employees and developed special benefit packages to assist them during their search for new jobs. In addition, Brown–Forman gave the terminated employees the option of accepting an extra benefits package in consideration for a complete release of any claims the employee might have against the company.

William B. Gormin was one of the employees who was terminated in November 1986. Gormin's severance package was described in a three-page document dated November 10, 1986. In exchange for executing a release of any claims against the company, Brown–Forman offered Gormin payments of $56,003.00, plus other benefits. Under the heading "Severance," the first sentence of the document stated that receipt of this amount was contingent upon execution of the release:

> You will receive 61 weeks of severance pay at your current base salary rate, if you accept the terms and conditions described below under the heading "Complete Release."

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

The document concluded with a section entitled *"COMPLETE RELEASE,"* which provided as follows:

> By law, you are entitled to certain compensation and benefits upon your termination of employment. These obligations will, of course, be satisfied by Brown–Forman. On the other hand, the offer of additional benefits, for example the severance pay, is consideration for your complete and total release of all claims of whatever nature you may have against Brown–Forman, its subsidiaries, divisions, officers, agents or assigns, now or in the future ('Brown–Forman'). If you have any questions concerning your legal rights, you should consult with legal counsel. Your acceptance of the terms and conditions of severance contained in this three page document will constitute a binding agreement....
>
> \* \* \* \* \* \*
>
> I have read the terms and conditions of my termination of employment and fully understand my signature is a voluntary release of any claims of whatever nature I have against Brown–Forman.

Gormin had approximately three weeks from the date he received notice of the termination of his employment to decide whether to accept the extra severance benefits. He dated his acceptance of the written offer on November 19, 1986.

On July 13, 1988, Gormin filed a complaint alleging that Brown–Forman discharged him in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (ADEA). Jack A. Adams and a group of other individuals filed a similar complaint against Brown–Forman on August 25, 1989. On September 29, 1989, the Equal Employment Opportunity Commission (EEOC) filed a complaint alleging that Brown–Forman discharged approximately 104 employees in violation of the ADEA.

The district court later consolidated the three cases.

On November 1, 1989, Brown–Forman filed a motion to dismiss and for summary judgment against Gormin based on Gormin's November 19, 1986 severance agreement, which included the release of any claims against Brown–Forman. In an order entered July 11, 1990, 744 F.Supp. 1100, the district court held that neither Gormin nor any other person could release an ADEA claim unless a court or the EEOC supervised the release.[1] This appeal followed.

## II. DISCUSSION

### A. *Validity of Unsupervised Releases of ADEA Claims*

 The appellant argues that the district court erred in holding that all unsupervised releases of ADEA claims are void as a matter of law. The appellees argue that because the ADEA incorporates the Fair Labor Standards Act (FLSA),[2] which prohibits certain unsupervised releases, Congress intended that ADEA claims may not be released without supervision by a court or agency. The appellees also rely on recent congressional activity to support their argument. As discussed below, a recent decision by the United States Supreme Court and decisions by all the courts of appeals that have addressed the issue support the appellant's contention that ADEA claims may be released without supervision by the EEOC or by a court.

The United States Supreme Court recently stated that

> nothing in the ADEA indicates that Congress intended that the EEOC be involved in all employment disputes. Such disputes can be settled, for example, without any EEOC involvement. *See e.g., Coventry v. United States Steel*

---

1. In the same order, the court granted the private plaintiffs leave to amend the complaint to add Jack Adams as a named plaintiff and William Gormin as an opt-in plaintiff. On July 23, 1990, the private plaintiffs filed an amended complaint that deleted Gormin from the style of the case and showed Adams as the named plaintiff in both private actions.

2. The ADEA provides that it "shall be enforced in accordance with the powers, remedies and procedures provided in ... [the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 216, 217]." 29 U.S.C. § 626(b).

*Corp.,* 856 F.2d 514, 522 (3d Cir.1988); *Moore v. McGraw Edison Co.,* 804 F.2d 1026, 1033 (8th Cir.1986); *Runyan v. National Cash Register Corp.,* 787 F.2d 1039, 1043 (6th Cir.) [en banc], *cert. denied,* 479 U.S. 850 [107 S.Ct. 178, 93 L.Ed.2d 114] (1986).

*Gilmer v. Interstate/Johnson Lane Corp.,* — U.S. ——, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991). The appellees argue that the foregoing observation, which was unnecessary to the Supreme Court's holding that age discrimination claims are subject to binding arbitration agreements, is dictum and therefore not binding on this court. Nevertheless, the Supreme Court's language is persuasive not only for what it says, but also because it favorably cites the decisions of other circuits which have upheld unsupervised waivers of ADEA rights.

The Sixth Circuit addressed the issue in *Runyan v. National Cash Register Corp.,* 787 F.2d 1039 (6th Cir.1986). In *Runyan,* the court recognized that the ADEA incorporates the FLSA and that certain FSLA claims cannot be released without supervision. *Id.* at 1041–43. However, the court rejected the argument that, like FSLA claims, all ADEA claims must be supervised. *Id.* at 1043. According to the Sixth Circuit, unsupervised releases of ADEA claims are valid if they are made knowingly and voluntarily. *Id.* A number of circuits have adopted the Sixth Circuit's reasoning in *Runyan* and have concluded that voluntary waivers of ADEA claims are valid without agency or court supervision. *See, e.g., O'Shea v. Commercial Credit Corp.,* 930 F.2d 358, 361 (4th Cir.1991) (finding consensus among circuits that employees may settle ADEA claims against employers without EEOC involvement); *O'Hare v. Global Natural Resources, Inc.,* 898 F.2d 1015, 1016 (5th Cir.1990) (holding that waivers of ADEA causes of action are not void as against public policy); *Bormann v. AT & T Communications, Inc.,* 875 F.2d 399, 402 (2d Cir.), *cert. denied,* 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989) (holding unsupervised release of ADEA rights permissible if knowing and voluntary); *Coventry v. United States Steel Corp.,* 856 F.2d 514, 517 (3d Cir.1988) (recognizing general consensus that private settlement of claims not inconsistent with ADEA); *E.E.O.C. v. Cosmair, Inc., L'Oreal Hair Care Div.,* 821 F.2d 1085, 1091 (5th Cir.1987) (holding that waivers of ADEA claims not void as against public policy).

The district court below clearly was aware of these appellate court decisions. Nevertheless, the court focused on recent legislative activity indicating Congress' opposition to unsupervised releases of ADEA claims. For example, the district court noted that Congress suspended funding for the enforcement of an EEOC regulation, 29 C.F.R. § 1627.16(c)(1), which permitted the unsupervised waiver of ADEA claims. *See* Pub.L. No. 100–202, 1987 U.S.Code Cong. & Admin.News (101 Stat.) 1329–31; Pub.L. No. 100–459, 1988 U.S.Code Cong. & Admin.News (102 Stat.) 2216. The court also gave considerable weight to pending bills which would strictly limit the use of unsupervised waivers. *See* H.R. 1432, 101st Cong., 1st Sess. (1989); S. 54, 101st Cong., 1st Sess. (1989).

However, the district court's reliance on the pending bills and related debates in Congress was misplaced. Noting that these actions indicated Congressional support for limiting unsupervised waivers, the Second Circuit found that the recent legislative activity was not an authoritative interpretation of what the ADEA meant when it was enacted in 1967. *See Bormann v. AT & T Communications, Inc.,* 875 F.2d 399, 402 (2d Cir.1989). The court reasoned as follows:

> If Congress passes the bills that are now before it, the amendment will, of course, be an authoritative expression of what the 1989 congress intended[,] ... but until it does so, we can find no persuasive reason to disagree with the statutory interpretation of our sister circuits. Therefore, we hold that an unsupervised release of rights under the ADEA is permissible, subject to a close evaluation of various factors that are indicia of a "knowing" and "willful" waiver.

*Id.* (citations omitted). In fact, after the district court's ruling in the present case, Congress passed a statute governing unsu-

pervised waivers that are executed on or after October 16, 1990. *See* Older Workers Benefit Protection Act, Pub.L. No. 101–433, § 201 (October 16, 1990). Although the statute is inapplicable to the waivers in this case, it is significant because it contradicts the district court's holding, based on its interpretation of prior congressional activity, that all unsupervised releases of ADEA claims are invalid.

Having reviewed the decisions of all the appellate courts that have addressed the issue, as well as the Supreme Court's decision in *Gilmer*, we conclude that the district court clearly erred in ruling that all unsupervised waivers of ADEA claims are invalid. Accordingly, we reverse the district court's order and remand for a determination of the validity of Gormin's release of his ADEA claim.

### B. Standard to Be Used in Assessing Validity of Releases

■ Although the only issue on appeal is whether the district court erred in holding that all unsupervised releases of ADEA claims are invalid, the appellant has asked this court to articulate the correct standard for assessing the validity of a release before remanding the case to the district court.

As the Fourth Circuit noted in *O'Shea*, "[t]here is no dispute among the circuits that employees may validly waive their federal ADEA rights in private settlements with their employers, provided that their consent to a release is both knowing and voluntary." 930 F.2d at 361. However, the court perceived a split among the circuits as to the appropriate source of law to be used in determining the validity of a particular waiver. *See id.* Some courts have applied a "totality of the circumstances" test while others have applied ordinary contract principles. *Id.* at 361–362 (citations omitted). While the courts have used different labels for the standard used to determine whether a release is valid, they have essentially followed the same process for making that determination. Basically, the courts have examined the facts of a particular case to determine whether the waiver was made knowingly and voluntarily. *See, e.g., O'Shea*, 930 F.2d at 362; *O'Hare*, 898 F.2d at 1017; *Bormann*, 875 F.2d at 403; *Coventry*, 856 F.2d at 523.

The factors considered include the plaintiff's education and business experience, the amount of time he or she had to consider the agreement, the clarity of the agreement, whether the plaintiff consulted an attorney or had a fair opportunity to do so, whether the employer encouraged or discouraged the employee to consult an attorney, and whether the consideration given in exchange for the waiver exceeds the benefits to which the employee was already entitled. *See Bormann*, 875 F.2d at 403; *Coventry*, 856 F.2d at 523. While this list of factors is not exhaustive, it does provide some guidance for determining whether a waiver is knowingly and voluntarily executed. On remand, the district court should consider such factors in determining the validity of the release executed by Gormin.

### III. CONCLUSION

For the reasons discussed above, we REVERSE the district court's denial of appellant's motion for summary judgment and REMAND for a determination of whether the release of the ADEA claim in this case was valid.