Ronald C. AYLAIAN, Plaintiff,

v.

**TOWN OF HUNTINGTON, Town of Huntington General Services, Thomas Cavanagh, Thomas Boccard, Debra J. Lupski, Rosemary B. Wilhelm, Lisa Baisley, Joseph Reck, and Robert Algerio, (sued in their individual and official capacities pursuant to NYEL § 296), Defendants.**

No. CV 10–1448.

United States District Court, E.D. New York.

Jan. 20, 2011.

Scott Michael Mishkin, P.C., by Scott Michael Mishkin, Esq., Islandia, NY, for Plaintiff.

Cullen & Dykman LLP, by James P. Clark, Esq., Garden City, NY, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an employment discrimination case commenced by Plaintiff Ronald Aylaian ("Plaintiff"), alleging federal and state law claims of age and disability discrimination, as well as claims of a hostile work environment, retaliation, and failure to pay wages in accordance with the Fair Labor Standards Act. Named as Defendants are Plaintiff's former employer, the Town of Huntington, and the Huntington General Services (collectively "Huntington" or the "Town"), as well as seven individuals who are sued pursuant to state law.

Presently before the court is the motion of Defendants, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. The motion argues that all of Plaintiff's claims are barred by a resignation agreement and release that Plaintiff signed prior to leaving his employment with the Town. For the reasons set forth below, the motion is granted.

## DISCUSSION

### I. Plaintiff's Employment and Resignation

Plaintiff was employed as a refuse collector by the Town from 1979 until his resignation at age 60 in 2009. Because the motion before the court is concerned only with the enforceability of the resignation agreement and release (the "Release") executed by Plaintiff, the court will recite neither facts surrounding Plaintiff's allegations of disability nor those alleged to con-

stitute discriminatory treatment. Instead, the court focuses on the Release and facts surrounding its execution.

## II. *The Release*

The Release is properly before the court. It is dated January 5, 2009, and there is no question but that it bears Plaintiff's signature. The Release also contains the following important provisions:

- an acknowledgment that the Release is given in exchange for an incentive to which Plaintiff would not have been entitled had he not resigned;
- that the incentive received by Plaintiff was lifetime health insurance benefits for himself and his spouse, fully paid by his employer;
- an acknowledgment of the existence of various state, local and federal anti-discrimination and wage and hours laws, including, *inter alia,* laws that prohibit discrimination based upon age and disability;
- that Plaintiff is releasing his employer from all such claims;
- an acknowledgment that Plaintiff has 7 days in which to revoke the Release;
- an acknowledgment that the Release is offered pursuant to a retirement incentive program offered to a specified group of individuals, who would not otherwise be eligible for retirement;
- an acknowledgment that Plaintiff was advised to consult with an attorney prior to signing the Release;
- an acknowledgment that Plaintiff signed the Release knowingly and voluntarily, and
- an acknowledgment that Plaintiff was given 45 days in which to consider whether to sign the Release.

## III. *The Motion*

Defendants seek summary judgment on the ground that the Release bars all claims. The parties have completed all discovery relating to the Release and the matter is ripe for adjudication. Properly before the court is the Release, as well as Plaintiff's deposition testimony, and documents concerning the terms of his employment. After discussing applicable law, as well as facts properly before the court in the context of this motion, the court will decide the merits thereof.

## DISCUSSION

### I. *Standards on Motion for Summary Judgment*

The standards that apply to motions for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Reiseck v. Universal Communications of Miami, Inc.,* 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing entitlement to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more

than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002), quoting, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original). As stated by the Supreme Court in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' showing that a trial is needed, and '[i]t is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to that motion.' " *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984), quoting, *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment to " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.,* 77 F.3d 603, 615 (2d Cir.1996), quoting, *Research Automation Corp.,* 585 F.2d at 33.

## II. *Waiver of Claims of Employment Discrimination*

■ Where, as here, a plaintiff's employment discrimination claims arise under the Age Discrimination in Employment Act (the "ADEA"), as well as other statutes, any release must comply with both the Older Workers' Benefit Protection Act

of 1990 ("OWBPA"), 29 U.S.C. 626(f), as well as a "totality of the circumstances" test. *See, e.g., Bachiller v. Turn On Products, Inc.,* 2003 WL 1878416 *2–3 (S.D.N.Y.2003).

The OWBPA enumerates clearly the minimum requirements for a waiver of ADEA rights to be effective. Specifically, the statute requires that any waiver of rights under the ADEA must be "part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate." 29 U.S.C. 626(f)(1)(A). Additionally, the waiver must:

- specifically refer to rights or claims arising under the statute;
- not waive rights or claims that may arise after the date the waiver is executed;
- waive rights only in exchange for consideration that is in addition to anything of value to which the individual already is entitled;
- advise of the right to consult with an attorney prior to executing the agreement;
- given the signer at least 21 days within which to consider the agreement; or
- if the waiver is executed in connection with an exit incentive or other employment termination program offered to a group of employees, the signer must be given at least 45 days in which to consider the agreement;
- provide that the waiver may be revoked for a period of at least 7 days following the execution of the waiver, during which 7 day period the waiver shall not be effective or enforceable.

29 U.S.C. § 626(f)(1)(A)-(F), If the waiver at issue is offered in connection with an exit incentive, or other employment termination program offered to a group or class of employees,

• the employer (at the commencement of the 45 day period referred to above) must inform the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to any eligibility factors for such program, and any time limits applicable to such program; and the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1)(H)(i)(ii). *See generally Clifford v. Home Box Office, Inc.*, 2009 Dist. LEXIS 43352 *13–14 (E.D.N.Y. 2009).

▮ As to the "totality of the circumstances" test applicable to test the validity of a waiver of employment rights other than those arising under the ADEA, courts consider the following factors:

• the plaintiff's education and business experience;

• the amount of time the plaintiff had possession of, or access to the agreement before signing it;

• the role of plaintiff in deciding the terms of the agreement;

• the clarity of the agreement;

• whether the plaintiff was represented by or consulted with an attorney;

• whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law;

• whether the employer encouraged or discouraged the employee with respect to consultation with an attorney, and whether the employee had a fair opportunity to do so.

*See Hsueh v. The Bank of New York*, 2006 WL 2778858 *4 (S.D.N.Y.2006); *Bachiller*, 2003 WL 1878416 *3, *see also Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 403 (2d Cir.1989). These factors are not exhaustive, and it is not necessary for the court to consider each and every factor, with equal weight, in every case. *Hsueh*, 2006 WL 2778858 *4.

III. *Disposition of the Motion*

A. *The Evidence*

The evidence before the court relevant to the factual issues that bear upon enforcement of the Release consists of Plaintiff's deposition testimony, and affidavits with accompanying employment documents. What is made clear by that evidence is the fact that Plaintiff executed the Waiver while sitting in a truck with Joseph Berbinach, an individual who is now deceased. Berbinach is described only as a friend and/or advisor to Plaintiff, He was neither an attorney, nor a representative of Plaintiffs' employer or union. Despite recitations in the Release, Plaintiff testified that he did not have a chance to review the Release prior to signing, and that he did not understand its terms.

Defendants have submitted two affidavits of Lisa Baisley ("Baisley"), the Town's Personnel Officer. Baisley maintains Town personnel records, and is responsible for the administration of early retirement incentive programs negotiated with the Town's unionized employees. There is no indication that Plaintiff made any attempt to depose Baisley. The Baisley affidavit submits the employment application form submitted, and signed by Plaintiff when he first applied for a position with the Town in June of 1986. That application states, *inter alia*, that Plaintiff served in the United States Navy on a Navy oil tanker from 1968 through 1972, and in the United States Army as a "crew chief—aviation—helicopter," from 1972 through 1974. Prior to applying for a position with the Town, Plaintiff worked as a private chauffeur at a lumber company, and as a weld-

er/fabricator. As to education, the application states that Plaintiff is a high school graduate.

The Baisley affidavits also demonstrate that Plaintiff was a member of Local 342, Long Island Public Service Employees ("Local 342"). When asked about union membership, Plaintiff made reference to "342," and the court finds no issue of fact as to Plaintiff's union membership. As a member of Local 342, the most recent terms of Plaintiff's employment were set forth in the 2007–2010 collective bargaining agreement, and a subsequent memorandum of understanding, which contained an early retirement incentive program. The terms of that incentive provide that employees who elect to participate in the program shall receive fully paid health insurance for life from the Town. In the absence of this incentive, the Town would be responsible for only 75% of the payment of retiree health benefits, and retired employees would be responsible for the remaining 25%. Defendants' description of the incentive program is supported by its submission of the health insurance portion of the Local 342 collective bargaining agreement, as well as the aforementioned memorandum of agreement entered into between the Town and Local 342. These documents support the description of the terms of Plaintiff's employment and the incentive program as described above.

Plaintiff states that he never saw the Release prior to the date upon which it was executed, and that its recitations to the contrary are false. At his deposition, Plaintiff did admit, however, that he spoke about a possible retirement incentive with two union representatives, months before execution of the Release. In particular, Plaintiff sated that he had a conversation with two individuals who he identified as union representatives, and that these individuals mentioned to him that there was a retirement incentive. When asked wheth-

er he was told about keeping his health insurance, "fully paid for life," Plaintiff responded, "maybe I did, yes." Although Plaintiff states that he was told that he would be fired if he refused to sign the Release, when asked whether anyone from the Town told him that he would be fired, he replied "no they did not." Although he could not identify any Town employee who made any threat, Plaintiff stated that he was "caught in a trap," and was being pressured by everyone in the Town, "from A to Z."

B. *The Motion is Granted*

■ The court turns first to the issue of whether the Release complies with the requirements of the OWBPA, and holds that it does. The Release recites specifically the nature of the claims being waived. It also states that Plaintiff waives only those claims that "happened up to" its effective date, and therefore complies with the requirement that there is no waiver of any claim arising after the date the waiver is executed. As to consideration for the waiver, it is clear that the 100% payment of health benefits until death is something of value to which Plaintiff would not otherwise have been entitled. Plaintiff's unsupported statement as to his "belief" that he "would have been entitled to some, if not all of his health benefits" upon retirement is belied by the terms of his collective bargaining agreement, and fails to create an issue of fact as to the question of consideration received in return for the Release. The specific time periods required by the OWBPA are recited in the Release. Plaintiff's statement at to the falsity of the time periods recited in the Release is unsupported by any evidence other than Plaintiff's testimony, and is belied by Plaintiff's admission that he discussed the early incentive program with his union representatives months before the signing of the Release. Indeed, this testimony is

consistent with the 45 day period set forth in the Release, as required by the OWB-PA.

■ The court relies on similar evidence to hold that the "totality of the circumstances" test applicable to the waiver of employment rights other than those arising under the ADEA is also met. Plaintiff's employment application indicates that he was a high school graduate. He was employed in private industry prior to his employment with the Town, and served in the military in positions that appear to have been of some responsibility. Despite Plaintiff's assertions that he is a slow reader, the objective facts of his education and employment are sufficient to establish that his education and business experience were sufficient to find that he was able to understand the terms of the Release. The Release is written in plain language, and Plaintiff was clear when he testified that he knew of the incentive program, and that he was resigning his position with the Town upon signing the release. While Plaintiff did not, in fact, consult with an attorney, his signature on the Release acknowledges that he had been advised of his right to do so, and that he signed the Release "knowingly and voluntarily." One need not be an attorney or trained in business, law or management to be able to understand an early retirement incentive program such as that described in the Release. Finally, in view of the fact that the federal waiver tests described above are "somewhat more stringent than the analysis called for under ordinary [New York State] contract law, for determining whether a release of discrimination claims was executed knowingly and voluntarily," the court's holding necessarily leads to dismissal of any claim of employment discrimination arising under state law. *Bachiller*, 2003 WL 1878416, at *3.

For the foregoing reasons, the court holds that Plaintiff has failed to create any issue of fact as to the enforceability of the Release. Defendants have sustained their summary judgment burden of showing their entitlement to dismiss this case based upon Plaintiff's bargained-for waiver of his right to sue. Plaintiff signed the Release, and under the evidence properly before the court, cannot be heard to repudiate that to which he agreed. Plaintiff's opposition to the motion relies on unsupported statements made during his deposition, and the allegations of his complaint. This evidence is insufficient to defeat summary judgment.

## CONCLUSION

Defendants' motion for summary judgment is granted. The Clerk of the Court is directed to terminate the motion and to close the file in this case.

SO ORDERED.